UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SUZETTE ZAK,

         Plaintiff    DECISION AND ORDER

-vs-

               1:18-CV-00724 CJS

ANDREW M. SAUL,
Commissioner of Social Security,

         Defendant.
_____

APPEARANCES

| | |
|---|---|
| For the Plaintiff: | Taylor C. Schubauer |
| | William C. Bernhardi |
| | William C. Bernhardi Law Offices |
| | 950-A Union Road, Suite 240 |
| | West Seneca, New York 14224 |
| For the Defendant: | James Desir |
| | Social Security Administration |
| | Office of General Counsel |
| | 26 Federal Plaza, Room 3904 |
| | New York, New York 10278 |
| | Francis D. Tankard |
| | Joshua R. Sumner |
| | Social Security Administration |
| | Office of General Counsel |
| | 601 E. 12th Street, Room 965 |
| | Kansas City, Missouri 64106 |

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant"), which denied the application of Suzette Zak ("Plaintiff") for Supplemental Security

1

Income ("SSI") benefits.   Now before the Court is Plaintiff's motion (Docket No. [#8]) for judgment on the pleadings and Defendant's cross-motion [#11] for the same relief.   For the reasons discussed below, Plaintiff's application is granted, Defendant's application is denied, and this matter is remanded for further administrative proceedings.

FACTUAL BACKGROUND

The reader is presumed to be familiar with the facts and procedural history of this action.   The Court will summarize the record only as necessary for purposes of this Decision and Order.

On March 21, 2014, Plaintiff filed for SSI benefits, claiming to be disabled due to a combination of physical impairments including migraine headaches, degenerative joint disease of the cervical spine and lumbar spine, chronic pain with extension of the arms, numbness in the right hand and difficulty sleeping. (232).   The Social Security Administration Interviewer who completed Plaintiff's Field Office Disability Report noted that Plaintiff appeared to have difficulty sitting, standing and walking, adding: "She seemed like she was on the verge of tears the whole interview.   . . .   During the interview she alternated between sitting and standing.   She seemed like she was in pain." (220).

On June 4, 2014, Plaintiff's claim was denied initially by a "Disability Examiner - DDS," who was evidently not a physician. (96).[1]   There is no indication that Plaintiff's claim was ever reviewed by a physician employed by the Commissioner, and the Commissioner opted not to obtain an outside consultative examination.

---

[1] Unless otherwise noted, citations are to the Administrative Transcript.

On February 8, 2017, a hearing was conducted before an Administrative Law Judge ("ALJ"). Plaintiff appeared at the hearing with an attorney representative. (60). The ALJ heard testimony from Plaintiff and from a vocational expert ("VE").

At the time of the hearing, Plaintiff was fifty-three years of age and her education consisted of high school and two years of college. (65). Plaintiff also had vocational training in cosmetology and computer software. (65). Plaintiff had previously worked as a dietary aide and as a stocker in a retail store.

At the hearing, Plaintiff indicated that her severe impairments consisted of "carpal tunnel syndrome, migraines, asthma, cervical disk disorder with myelopathy, [and] lumbar disk degeneration with stenosis." (63). Plaintiff also indicated that she sometimes feels "foggy headed," which is apparently due to her medications as there is no indication that she has any cognitive impairments. (66). Plaintiff testified that since her alleged onset date, March 21, 2014, her condition has essentially remained the same, though she has received some benefit from pain injections for her migraine headaches. (66-67). Plaintiff stated, though, that her migraine-headache medications make her feel tired and forgetful. (79-80).

Regarding the effects of her impairments on her ability to work and function in daily life, Plaintiff stated that her "worst problems" are her head, neck and legs. (68-69). Regarding her migraine headaches, Plaintiff stated that she feels constant "pressure" in her head, with headaches occurring "every three days" on average. (69). Plaintiff indicated that she gets two different types of headaches, one related to her cervical disk disorder, which is triggered by movement of her arms, and one that is migraine-type.

3

(69-70, 87). Plaintiff further indicated that she often feels nauseous in connection with her headaches. (70). Overall, Plaintiff indicated that her headaches make her feel as she if "can't function." (81). Plaintiff emphasized that many activities that require her to extend her arms, such as reaching, driving, or pushing a shopping cart, trigger her headaches. (88).

Regarding her lower back pain, Plaintiff indicated that she wears a prescribed back brace, and must be careful about how she moves her hips, back and arms. (70-71). Plaintiff stated that she takes a "muscle relaxer" medication for her back. (72).

Regarding her carpal tunnel syndrome, Plaintiff testified that her hands are numb constantly and that she wears braces at night for sleeping. (72). Plaintiff indicated that she would have difficulty using her hands consistently to pick up objects or to use a computer keyboard, due to the numbness. Plaintiff also indicated that she feels unsure of her hand strength when holding her newborn grandson. (84). Plaintiff stated that she can lift and carry a gallon of milk, but only if she braces it against her chest. (75).

Plaintiff stated that she can sit for only about twenty minutes at a time before needing to get up and move. Plaintiff stated that she can stand for about forty-give minutes at a time, if she is not using her arms. Plaintiff further stated that she has difficulty bending and maintaining balance. Plaintiff indicated that she is able to drive and perform short errands, but otherwise spends her time "puttering" around her house performing basic household chores, but only in stages spread throughout the day. (78). Additionally, Plaintiff indicated that she has consistently poor sleep, due to pain from her various ailments, and that she needs to lay down for about 20 minutes each day. (79).

Plaintiff stated that she feels well enough to cook meals on certain days, but not others. (78).

On April 10, 2017, the ALJ issued a Decision finding that Plaintiff was not disabled at any relevant time.  Following the familiar five-step sequential analysis used to evaluate Social Security disability claims,[2] the ALJ made these findings at the first three steps: 1) Plaintiff had not engaged in substantial gainful activity since her application date, March 21, 2014; 2) Plaintiff had severe impairments consisting of "bilateral carpal tunnel syndrome, migraines, asthma, cervical spondylosis, and degenerative disc disease of the lumbar spine with stenosis"; and 3) Plaintiff's impairments, singly and in combination, did not meet or medically equal a listed impairment.

Prior to reaching step four of the sequential analysis, the ALJ made the following residual functional capacity ("RFC") determination:

> [C]laimant has the residual functional capacity to perform light work[3] . . . except she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, and never climb ladders, ropes, and scaffolds.

---

[2] *See, Bowen v. City of New York*, 476 U.S. 467, 470, 106 S. Ct. 2022, 2025, 90 L. Ed. 2d 462 (1986) ("Pursuant to statutory authority, the Secretary of Health and Human Services has adopted complex regulations governing eligibility for SSD and SSI payments. 20 CFR pt. 404, subpart P (1985) (SSD); 20 CFR pt. 404, pt. 416, subpart I (1985) (SSI). The regulations for both programs are essentially the same and establish a five-step "sequential evaluation" process.").

[3] "The Commissioner's regulations define light work as follows: 'Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.' 20 C.F.R. § 404.1567(b)." *Giddings v. Astrue*, 333 F. App'x 649, 651 (2d Cir. 2009).

> She can frequently reach overhead with the bilateral upper extremities, and she can frequently, but not constantly, engage in fine and gross manipulation with the bilateral upper extremities. She must never work around unprotected heights or dangerous machinery, and she must avoid concentrated exposure to loud noise, vibration, dust, odors, fumes, and other pulmonary irritants.

(14). This RFC determination is notable in that it is *not* based on any medical opinions of record. Indeed, the only medical opinion in the entire record concerning Plaintiff's abilities is a statement from one of her treating physicians, Anthony M. Leone, M.D., who, on May 2, 2013, opined that Plaintiff was temporarily disabled due to her neck and back pain at that time. (485). However, the ALJ gave Dr. Leone's opinion "little weight," purportedly because it was "vague, conclusory and lack[ed] the function-by-function analysis required for a determination of Social Security Disability." (17). Instead, the ALJ's RFC determination essentially parrots the conclusions of the non-physician Disability Examiner who denied Plaintiff's claim initially (102-104), with one exception: Although the Disability Examiner indicated that Plaintiff could *not* do more than "occasional"[4] overhead reaching (103), the ALJ indicated that Plaintiff could "frequently"[5] reach overhead. (14).

The ALJ, in the absence of any medical opinion besides that of Dr. Leone, which she rejected, explained her RFC determination by reviewing and discussing the various doctors' office notes and test results in the record. (14-18). The ALJ began by

---

[4] "'Occasionally' means occurring from very little up to one-third of the time." Titles II & Xvi: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983)
[5] "'Frequent' means occurring from one-third to two-thirds of the time." Titles II & Xvi: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983)

acknowledging that objective medical evidence, including x-rays and MRI scans, revealed disc degeneration in Plaintiff's cervical spine that would account for her neck pain and headaches. In particular, the ALJ noted that Dr. Leone had indicated that such test results were "consistent with muscle spasms" and with Plaintiff's headaches. (15). The ALJ indicated, though, that Plaintiff's headaches might not be as severe as she claimed, since Plaintiff never had surgery to alleviate the problem, since chiropractic care had helped Plaintiff initially, and since Dr. Leone had found, during an office visit, that Plaintiff was "neurologically intact" and had "excellent range of motion in her upper extremities." (15).

The ALJ noted that Plaintiff's headaches were "associated with blurry vision, nausea, occasional vomiting, and imbalance, and that movement, especially walking and lifting her arms, elicited migraines." (15). The ALJ also acknowledged that such headaches "occurred several times per week." (16). However, the ALJ interpreted office notes to indicate that Plaintiff did not consistently follow her doctor's directions concerning her headache medications. (16). For example, the ALJ stated that Plaintiff "was prescribed propranol and amitriptyline, but she did not take it consistently, despite being advised to do so. She has repeatedly reported being please with the result when she takes sumatriptan at the onset of a headache, but would then wait hours or even a day before taking it." (16). The ALJ indicated that Plaintiff's testimony was inconsistent with this information, since she indicated that "she ha[d] taken all medications as prescribed." (16).

The ALJ also noted that starting in 2014, Plaintiff had begun receiving botox injections for her headaches, which were somewhat effective. However, the ALJ implied that Plaintiff had testified inconsistently with the pertinent office notes, stating:

> She has received these injections every three months since then, and has reported an overall decrease in migraine activity, denied any adverse effect, and reported that the injections las until two weeks prior to the next injection. It was noted that she was doing well in general on the current treatment regimen. However, the claimant testified that she has pressure headaches every day and has headaches every three days for which she must take medication. She stated that the medication and injections ease the pain a bit but [do] not take the headache away.

(16).

The ALJ next noted that a neurosurgeon, John Pollina, M.D., had examined Plaintiff in 2014 and had found "mild tenderness with palpation of cervical paraspinal muscles," along with "cervical spondylosis caused neck pain that radiated to shoulders, headaches, and numbness in [Plaintiff's] hand." (15). However, the ALJ stated that although Dr. Pollina recommended physical therapy, which seemed to be effective, at least with regard to the right side of Plaintiff's neck, Plaintiff had eventually stopped attending physical therapy, and did not resume such therapy until August 2016. (15).

The ALJ next observed that electrodiagnostic studies performed in 2013 showed "evidence of a median mononeuropathy at the right wrist, of moderate severity," and that similar testing in 2014 also showed "mild left carpal tunnel syndrome and left ulnar nerve neuropathy." (15). The ALJ, though, noted that Plaintiff had "not received injections or physical therapy for her hands," that "surgery ha[d] not been recommended," and that Plaintiff had never been to a "hand specialist." (15).

8

With regard to medical evidence concerning Plaintiff's lower-back pain, the ALJ observed that "x-rays and an MRI of her lumbar spine demonstrated disc degeneration and bulging, osteophyte formation at L4-5 andL5-S1, and spondylolisthesis (slipping disc) at L4-L5 and L5-S1," and that "her right leg was shorter than her left, and a lift was prescribed for her shoe." (16). The ALJ further observed that in August 2016, Plaintiff's treating physician found "lumbosacral tenderness, mild to moderate tender synovitis in the peripheral joins on palpation," "mild tenderness of right hip on active motion, and mild swelling of right ankle." (16). The ALJ also noted that Plaintiff wears a prescribed back brace. However, the ALJ indicated that office notes showed some improvement of Plaintiff's symptoms and increased flexibility from "physical therapy, a back brace and heating pad," and suggested that Plaintiff was therefore exaggerating when she indicated that she was unable "to bend due to low back pain." (16).

Overall, the ALJ found that Plaintiff's complaints were not consistent with the medical records, stating:

> The level of treatment that she has received for her hands, neck and back are inconsistent with claims of disabling symptoms. She has not treated with Dr. Leone since 2013 and has not seen Dr. Pollina or any spine specialist since 2014. She has received no treatment other than wrist splints, and has not consulted a hand specialist, for her carpal tunnel syndrome. While she testified to migraines that render her unable to function, the medical records show improvement in her condition with medications and injections.

(17).

The ALJ also discussed Plaintiff's activities of daily living, finding them not to be fully consistent with Plaintiff's complaints. In this regard, the ALJ stated: "She is capable

9

of personal grooming, light chores including laundry and dishes, and shopping. She traveled to Ohio last year and will visit family for holidays and birthdays. While she stated that her pain and migraines are exacerbated by lifting her arms in front of her, she can drive and demonstrated this action at the hearing." (17).

At step four of the sequential analysis, the ALJ found that Plaintiff cannot perform any of her past relevant work. (18). Finally, at the fifth and final step of the sequential analysis, the ALJ found that, considering Plaintiff's age, education, work experience and RFC, she could perform other jobs that exist in substantial numbers in the national economy. (18). In particular, the ALJ found (based upon testimony by the VE in response to a question about a hypothetical claimant with the same RFC as found by the ALJ) that Plaintiff can perform the jobs of "mail clerk," "information clerk" and "office helper." (19, 93).

Plaintiff appealed, but the Appeals Council declined to review the ALJ's determination.

On June 29, 2018, Plaintiff commenced this action. On February 19, 2019, Plaintiff filed the subject motion [#8] for judgment on the pleadings. Plaintiff contends that the Commissioner's determination should be reversed because the ALJ committed errors of law, and because the RFC determination is not supported by substantial evidence. More specifically, Plaintiff contends that the ALJ erred by failing to develop the record to include medical opinion evidence, and by instead making the RFC determination based on her own lay assessment of the medical record. Plaintiff further contends that there is not substantial evidence of record to support the finding that Plaintiff

can perform the exertional requirements of light work, especially the requirements for walking, standing, lifting and carrying.  For example, Plaintiff notes that light work requires the ability to lift and carry twenty pounds occasionally and ten pounds frequently, while the record indicates only that she can carry a gallon of milk weighing less than ten pounds, and then only if she braces it against her chest.  Plaintiff also contends that the record fails to support the ALJ's finding that Plaintiff can frequently reach above her head with both arms.   On this point, Plaintiff notes that her ability to drive a car short distances, which requires her to extend her arms, does not translate into an ability to frequently reach overhead.  Rather, Plaintiff contends that the medical record establishes that arm movements are the major trigger of her cervical-spine-related headaches.  Plaintiff emphasizes that the ALJ's failure to support the RFC finding with competent substantial evidence is significant because if she were found to be able to perform only sedentary work, then the grids require a finding of "disabled," based on her age, education and work experience.

Plaintiff further contends that the evidence concerning her limited activities of daily living does not amount to substantial evidence for the ALJ's determination that Plaintiff can work on a regular and continuing basis, that is, "8 hours a day, for 5 days a week, or an equivalent work schedule."[6]  Plaintiff notes, for example, that the evidence shows she experiences debilitating headaches more or less constantly, even with medication.  On this point, Plaintiff maintains that the ALJ misstated the record concerning the effectiveness of Plaintiff's headache treatments, since Plaintiff continues to experience

---

[6] Pl. Memo of Law [#8-1] at p. 21.

headaches on a five-out-of-ten scale of severity even with medication. *See*, Pl. Memo of Law [#8-1] at p. 23 ("Despite three forms of treatment on a consistent basis, Plaintiff was still unable to alleviate her migraine pain to anything lower than a 5/10."). Plaintiff further indicates that the ALJ exaggerated the effectiveness of her botox headache injections, since, according to the record, such injections, while effective temporarily, tend to wear off more than two weeks prior to her next scheduled injection. Plaintiff requests that the Court reverse and remand the matter for further administrative proceedings.

On April 19, 2019, Defendant filed the subject cross-motion [#11] for judgment on the pleadings. Defendant counters that Plaintiff's arguments lack merit and that the Court should affirm the Commissioner's determination. Defendant contends that the ALJ did not need to develop the record with additional medical opinion, and that she made a correct RFC determination, in light of "Plaintiff's pursuit of minimal treatment and receipt of conservative treatment for her neck, low back, and hand symptoms, the improvement of her headache and pain symptoms with treatment, her noncompliance with headache medication, her daily activities, and the benign examination findings of her medical providers."[7] Defendant further contends that insofar as Plaintiff maintains that the RFC determination was incorrect, it is her own fault since she "had the burden to prove a disabling RFC, but she failed to do so."[8]

On May 10, 2019, Plaintiff filed a reply [#13]. In that reply, Plaintiff contends, *inter alia*, that similar to the ALJ's decision, the Defendant's brief "cherry picks" information

---

[7] Def. Memo of Law [#11-1] at p. 10.
[8] Def. Memo of Law [#11-1] at p. 14.

from the medical record that supports the ALJ's RFC determination, while ignoring other evidence indicating that Plaintiff's limitations are more serious than the ALJ found.[9] Plaintiff also reiterates that the record fails to support the ALJ's finding that Plaintiff has the exertional abilities to perform the walking, standing, lifting and carrying requirements of light work. Plaintiff states, for example, that "the record is devoid of any medical opinion or mention of Plaintiff's lifting and carrying abilities."[10]

The Court has considered the parties' submissions and the entire record.

## STANDARDS OF LAW

42 U.S.C. § 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive." The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered. *Id.*

---

[9] Pl. Reply Memo of Law [#13] at p. 2.
[10] Pl. Reply Memo of Law [#13] at p. 3.

13

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted).

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).

<u>The ALJ Erred in Failing to Develop the Record, and</u>
<u>Her RFC Finding Is Not Support by Substantial Evidence</u>

Plaintiff maintains that the ALJ erred by failing to develop the record insofar as she failed to obtain any medical opinion evidence concerning the effects of Plaintiff's severe impairments on her ability to work. Indeed, as already noted, the ALJ essentially rejected the only medical opinion in the record, and then proceeded to make an RFC determination based solely on her own interpretation of the medical records. Plaintiff further contends that the RFC determination is not supported by substantial evidence, since there is no indication how the ALJ could have found either that Plaintiff is able to meet the lifting and carrying demands of light work or that she is able to reach overhead frequently. The Court agrees.

14

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record. The ALJ's affirmative duty to develop the record exists even when the claimant is represented by counsel." *Klemens v. Berryhill*, 703 F. App'x 35, 36 (2d Cir. 2017) (citations omitted). "This duty arises from the Commissioner's regulatory obligations to develop a complete medical record before making a disability determination." *Miller v. Comm'r of Soc. Sec. Admin.*, 784 F. App'x 837, 839 (2d Cir. 2019) (citation and internal quotation marks omitted).

"Although the RFC assessment is reserved for the commissioner, the assessment remains a medical determination that must be based on medical evidence of record, such that the ALJ may not substitute her own judgment for competent medical opinion." *Pastore v. Saul*, No. 18-CV-01077-LGF, 2020 WL 548490, at *5 (W.D.N.Y. Feb. 4, 2020) (citations omitted). For this reason, courts in this Circuit have reversed decisions where an ALJ has made an RFC determination without the guidance of any medical source opinion. For example, in one recent case, the district court rejected arguments similar to those raised by Defendant in this action, stating:

> The defendant argues that the plaintiff's testimony and references in the medical record that she performed household tasks and walked for exercise allowed the ALJ to reasonably find that the plaintiff could perform the lifting, carrying, sitting, standing, and walking necessary to perform light work and that she could occasionally perform postural maneuvers. It is well settled, however, that an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings. Specifically, where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities, as was the case here, then the ALJ may not make

15

the connection himself.

An RFC is a medical determination that must be based on probative evidence of record. Accordingly, the ALJ may not substitute his own judgment for competent medical opinion. In this case, the ALJ erred by developing an RFC based on his own interpretation of the medical record and the plaintiff's testimony about what she could do. The plaintiff's activities of daily living are only one of many factors in determining a claimant's RFC. Moreover, although the RFC determination is an issue reserved for the commissioner, an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence. In the absence of a functional assessment of the plaintiff, the ALJ reached his RFC determination based on his own interpretation of the medical record. Such action by the ALJ constitutes error.

In the face of such a gap in a record, the ALJ should have fulfilled his duty to develop the record. Indeed, he had many avenues to fill the gap in the record: he could have requested additional information from the treating providers, obtained a consultative examination, or sought a medical expert opinion. On remand, the ALJ shall employ whichever of these methods are appropriate to fully develop the record as to the plaintiff's] RFC.

*Mungin v. Saul*, No. 3:19 CV 233 (RMS), 2020 WL 549089, at *10 (D. Conn. Feb. 4, 2020) (citations and internal quotation marks omitted). In this action, the Court finds that the ALJ erred in the same manner.

Defendant nevertheless contends that the ALJ did not need to develop the record, citing *Monroe v. Colvin*, 676 F.App'x 5, 8-9 (2d Cir. 2017) ("*Monroe*"). However, Defendant's reliance on *Monroe* is misplaced, for the same reasons already explained by another judge of this District:

[The] restrictions, incorporated into the ALJ's RFC for plaintiff, do not have any medical or other evidentiary basis in the record. Indeed, there are no

medical source statements in the record from an acceptable source upon which the ALJ could base the RFC he assigned to plaintiff.

The Commissioner concedes this point but relies on *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5 (2d Cir. 2017) (summary order) in arguing that the ALJ could forego medical opinion evidence in formulating an RFC.  In *Monroe*, the Second Circuit explained that where "the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, ... a medical source statement or formal medical opinion is not necessarily required." *Id.* at 8 (internal quotation marks and citations omitted). In *Monroe*, the Second Circuit held that "[b]ecause the ALJ reached her RFC determination based on the [treating doctor's] contemporaneous treatment notes — while at the same time rejecting his post hoc medical opinion ostensibly based on observations memorialized in those notes – that determination was adequately supported by more than a mere scintilla of evidence." *Id.* at 8-9.

That is not the case here. "While in some circumstances, an ALJ may make an RFC finding without treating source opinion evidence, the RFC assessment will be sufficient only when the record is 'clear' and contains 'some useful assessment of the claimant's limitations from a medical source.'" *Muhammad v. Colvin*, No. 6:16-cv-06369(MAT), 2017 WL 4837583, at *4 (W.D.N.Y. Oct. 26, 2017) (internal citation omitted). <u>In other words, the ALJ may not interpret raw medical data in functional terms.  Thus, where the record does not contain a useful assessment of Plaintiff's physical limitations, *Monroe* is of no help to the Commissioner</u>.

*Militello v. Comm'r of Soc. Sec.*, No. 17-CV-1046-JWF, 2019 WL 1409711, at *3 (W.D.N.Y. Mar. 28, 2019) (emphasis added; some citations and internal quotations marks omitted); *accord, Bartha v. Comm'r of Soc. Sec.*, 18-CV-0168-JWF, 2019 WL 4643584 at *2-3 (W.D.N.Y. Sep. 24, 2019) ("What is not found in the record, however, is how these physical impairments impact plaintiff's ability to work.   Where the record does not 'contain a useful assessment of Plaintiff's physical limitations,' *Monroe* is of no help to the Commissioner.").

17

Defendant alternatively cites *Trepanier v. Comm'r of Soc. Sec.*, 752 F. App'x 75, 79 (2d Cir. 2018) for the proposition that "even when an ALJ's RFC determination does not correspond to a medical opinion, the ALJ [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."[11] However, the *Trepanier* decision is factually inapposite for various reasons, including that it did *not* involve the situation presented here in which an ALJ made an RFC decision without any medical opinion evidence. *See, id.* at *78 ("In reaching this conclusion, the ALJ largely relied on the report of a consultative examiner, Dr. Herbert Reiher[.]").

Indeed, the *Trepanier* decision actually supports Plaintiff in this action, since it illustrates the need for there to be some evidence to support each facet of an RFC determination. For example, in *Trepanier* the ALJ had found that the claimant could perform "medium" work, which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."[12] However, while there was evidence that the claimant could frequently lift or carry 25 pounds, the Circuit Court was concerned whether there was *also* substantial evidence of record to show that the claimant could actually lift 50 pounds. *Id.*, 752 Fed. Appx. at 78-79. In the instant action, it is unclear how the ALJ found that Plaintiff can perform the lifting and carrying requirements of light work, since there seems to be no indication that she can lift 20 pounds or frequently lift or carry 10 pounds. Plaintiff testified that she can only lift

---

[11] Def. Memo of Law [#11-1] at p. 24.
[12] *Trepanier*, 752 Fed. Appx. at 78, n. 2.

18

and carry a gallon of milk with difficulty, by bracing it against her chest. Nor is there any explanation for the ALJ's conclusion that Plaintiff can frequently reach overhead, which is a glaring omission considering that the Disability Examiner who initially denied Plaintiff's claim concluded that Plaintif can only reach overhead occasionally, and the medical evidence indicates that reaching often triggers Plaintiff's headaches.

In sum, the Court finds that the ALJ erred in failing to develop the record and in substituting her own judgment for competent medical opinion when making her RFC determination. The matter is remanded for further administrative proceedings consistent with this Decision and Order, including the development of the record as to medical opinion evidence.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion for judgment on the pleadings [#8] is granted, Defendant's motion [#11] is denied, and this matter is remanded to the Commissioner for further administrative proceedings. The Clerk of the Court is directed to enter judgment for Plaintiff and to close this action.

So Ordered.

Dated: Rochester, New York
        February 28, 2020

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge